IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| PALMYRA PARK HOSPITAL, INC., d/b/a/ PALMYRA MEDICAL CENTER | ) ) ) | |
| Plaintiff, | ) ) | File No. 1:08-mc-00002-WLS |
| v. | ) ) ) | (*related case*: |
| PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.; PHOEBE PUTNEY HEALTH SYSTEM, INC.; and HOSPITAL AUTHORITY OF ALBANY/DOUGHERTY COUNTY, | ) ) ) ) ) ) | File No. 1:08-cv-00102-WLS) |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF
BLUE CROSS BLUE SHIELD HEALTHCARE PLAN
OF GEORGIA, INC.'S MOTION TO QUASH SUBPOENA**

In its Opposition to Movant Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.'s ("BCBSHP") motion to quash the subpoena issued November 21, 2008 by the Northern District of Georgia and served by Plaintiff ("Palmyra"), Palmyra asserts several arguments that are without merit.

First, Palmyra states that it has provided a "draft" of a "routine protective order" to BCBSHP which "addresses all of the confidentiality concerns that BCBS[HP] has raised." (See Pls' Opp. To Mot. to Quash at 1.)[1] Counsel for both Palmyra and BCBSHP had a telephone

---

[1] No such draft has been provided, unless Palmyra is referring to a proposed "Stipulated Protective Order" that was served with the November 21, 2008 subpoena, which is not specific to BCBSHP but purports to apply to "Subject Persons," defined as "any party to this action or any other person voluntarily making itself subject to this action." Given that this Court's Order of November 5, 2008 appears to halt all discovery in Civil Action No. 1:08-cv-102-WLS until further Court direction, and BCBSHP is not a party to that action nor has any intent to

2029836.1

discussion in which counsel for Palmyra indicated that he was working on a proposed resolution of the discovery dispute with Defendants and asked if the undersigned counsel would like to be kept "in the loop" in terms of these discussions. The undersigned counsel indicated his willingness to participate in such discussions, but no documents have been provided (other than what is referenced in note 1, *supra*) and no further discussions between the two counsel have occurred.[2]

Second, it is extremely doubtful that any "routine protective order" could possibly address all of the objections raised by BCBSHP in its Motion to Quash. In its opposition to the Motion to Quash, Palmyra grossly understates the scope of its own subpoena:

> Palmyra alleges [in its Complaint] that certain contracts between Phoebe Putney and BCBS[HP] have excluded Palmyra from the market and harmed competition. . . . The requested documents, which concern the negotiation and development of those exclusive contracts, therefore relate directly to the claims in the Complaint. . . . BCBS[HP] thus concedes the relevance of, and Palmyra's need for, the documents.

(See Pls' Opp. to Mot. to Quash at 2 (citations omitted).) In fact, the subpoena requests not only "contracts between Phoebe Putney and BCBS[HP]" (which themselves contain proprietary and confidential information), but also contracts with *every* hospital in Georgia; strategic marketing plans, analyses, and reports regarding market shares, charge discounts, and reimbursement rates

---

voluntarily make itself subject to the proposed "Stipulated Protective Order" served with the subpoena, any indication by Palmyra that "all of the confidentiality concerns that BCBS[HP] has raised" have been addressed is inaccurate.

[2] It should also be noted that the docket in Civil Action No. 1:08-cv-102-WLS reveals that this Court has issued no orders subsequent to its November 5, 2008 Order directing that the parties should not file a proposed scheduling/discovery order until further notice and resolution of the Motion to Stay Discovery filed by Defendants; moreover, there is also a pending Motion to Dismiss Palmyra's Complaint that is yet to be ruled upon. Consequently, any proposal by Palmyra for discovery discussions with non-parties appears premature at best.

statewide; and documents relating to managed care agreements with a number of other companies. (Compare Pls' Opp. to Mot. to Quash at 2 with Subpoena attached as Exhibit B to Motion to Quash.) Contrary to Palmyra's representation, the subpoenaed documents not only "concern the negotiation and development of those exclusive contracts [between Phoebe Putney and BCBS[HP]]," but constitute a fishing expedition designed to gather information to place BCBSHP in a competitive disadvantage with Palmyra and all other health care providers in the State of Georgia.

Third, contrary to Palmyra's unsupportable statement, BCBSHP has not conceded the relevance of or Palmyra's need for any of the subpoenaed documents. The unopposed Affidavit of Michael R. Hurst clearly establishes that every request for documents in the subpoena contains in whole or in part confidential, proprietary, or trade secret information, and that disclosure of such documents would (1) compromise the ability of BCBSHP to negotiate new or renewed agreements without being placed in a competitive disadvantage, (2) disclose the most sensitive proprietary information to Palmyra and potentially every provider in Georgia, and (3) disadvantage BCBSHP in future competitive bidding and contracts with government or private providers. (See Hurst Aff. ¶¶ 5-11 (attached as Exhibit D to Motion to Quash).) Palmyra submitted nothing to counter the Hurst Affidavit.

Finally, case law supports the granting of BCBSHP's motion. "A non-party may invoke the inherent power of the court to secure protection from discovery which seeks confidential or privileged information or which would cause undue burden on the non-party." Fadalla v. Life Automotive Products, Inc., No. 3:07-mc-42-J-32MCR, 2007 U.S. Dist LEXIS 88890, at *6 (M.D. Fla. Nov. 27, 2007). BCBSHP's status as a non-party should be considered by the Court

in weighing the burdens imposed by the subpoena.  See Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993); Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 535 (M.D. Fla. 2003).  Indeed, the status of BCBSHP as a non-party is a factor that weighs against disclosure of the subpoenaed documents.  See American Electric Power Co., Inc. v. United States, 191 F.R.D. 132, 136 (Fed. Cir. 1999); American Standard, Inc. v. Pfizer Inc., 828 F.2d 734, 738 (Fed. Cir. 1987).

Through the Hurst Affidavit, BCBSHP has already demonstrated that compliance with the non-party subpoena would require the disclosure of confidential and protected information and would present an undue burden upon it.  See Fadalla, 2007 U. S. Dist. LEXIS 88890, at *7.  The burden then shifts to Palmyra to show that its requests are relevant and, if so, the Court should balance Palmyra's need for the documents against the burden imposed upon BCBSHP along with its interest in keeping the requested information confidential.  See American Electric Power, 191 F.R.D. at 136.  Palmyra has not only failed to meet that burden but the interests of BCBSHP to preserve the confidentiality of the documents clearly outweigh the needs of Palmyra for the information.

In Cytodyne Technologies, the defendant issued a subpoena to a non-party to produce records concerning the non-party's business dealings with the plaintiff.  Cytodyne Technologies, 216 F.R.D. at 534.  The non-party objected to the subpoena "on the grounds it seeks trade secrets and proprietary information that if disclosed would give Defendant . . . a competitive advantage and that Defendant has failed to meet its burden establishing that the information sought is relevant and necessary to its lawsuit."  Id. (footnote omitted.)   After acknowledging that disclosure to a competitor is presumed to be harmful to the disclosing entity and finding that the

4

requested documents constituted trade secrets, the court concluded that harm to the non-party outweighed Defendant's need for the requested documents.  Id. at 536.  See also Fadalla, 2007 U.S. Dist. LEXIS 88890, at *15-16 (subpoena would require non-party to produce confidential agreements and would place it in a competitive disadvantage); Mannington Mills, Inc. v. Armstrong World Industries, Inc., 206 F.R.D. 525, 531-32 (D. Del. 2002) (harm to non-party by release of confidential information which could get into hands of competitors outweighs need of party subpoenaing documents and would not be alleviated by protective order); Allen v. Howmedica Leibinger, 190 F.R.D. 518, 526 (W.D. Tenn. 1999) (harm to non-party by disclosure of confidential information to presumed competitors cannot be rectified by protective order); Echostar Communications Corp. v. The News Corp, Ltd., 180 F.R.D. 391, 395 (D. Colo. 1998) (undisputed affidavits of non-party establish confidential and proprietary nature of requested documents and party issuing subpoena fails to demonstrate substantial need for materials).

    The scope and breadth of the subpoena served upon BCBSHP by Palmyra belie any argument that the relevancy of the demand outweighs the harm that would result from the disclosure of what is undisputed to be confidential and proprietary information.  Palmyra "may not simply engage in a fishing expedition." Essex Insurance Co. v. RMJC, Inc., No. 01-4049, 2008 U.S. Dist. LEXIS 54036, at *4 (E.D. Pa. July 16, 2008).  Aside from the procedural deficiencies which should lead this Court to quash the subpoena (previously discussed in the Motion to Quash), the non-party subpoena should also be quashed because its enforcement would result in undisputed confidential and proprietary information of BCBSHP being released in a manner that would place BCBSHP in a competitive disadvantage and the harm to BCBSHP by the enforcement of the subpoena would greatly outweigh the needs of Palmyra for the

requested documents.

Accordingly, for the above reasons, and for the reasons previously stated in its Motion to Quash filed December 19, 2008, BCBSHP urges this Court to grant its Motion to Quash Palmyra's subpoena issued November 21, 2008.

Respectfully submitted, this 30th day of January, 2009.

**TROUTMAN SANDERS LLP**

/s/ Mark H. Cohen
MARK H. COHEN
Georgia Bar No. 174567

Counsel for Non-Party
Blue Cross Blue Shield Healthcare Plan
 of Georgia, Inc.

Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308-2216
Telephone:    (404) 885-3597
Facsimile:    (404) 962-6753
Email: mark.cohen@troutmansanders.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that **REPLY BRIEF IN SUPPORT OF BLUE CROSS BLUE SHIELD HEALTH CARE PLAN OF GEORGIA, INC.'S MOTION TO QUASH SUBPOENA** was electronically filed with the Clerk of Court using the CM/ECF system, and was also served by regular first class mail to the following attorneys of record:

Christine A. Hopkinson, Esq.
M. Russell Wofford, Jr., Esq.
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521

Jeffrey S. Spigel, Esq.
King & Spalding LLP
1700 Pennsylvania Ave., NW, Suite 200
Washington, DC 20006-2706

William H. Hedrick, Esq.
127 North Westover Blvd.
Albany, GA 31707

John Passarelli, Esq.
James Sulentic, Esq.
Kutak Rock LLP
The Omaha Building
1650 Farnham Street
Omaha, NE 68102-2186

David J. Darrell, Esq.
Baudino Law Group
2600 Grand Avenue, Suite 300
Des Moines, IA 50311

Karin A. Middleton, Esq.
Baudino Law Group
2547 LaFayette Plaza Drive, Suite E
Albany, GA 31707

Denise Cleveland-Leggett, Esq.
Kenneth B. Hodges III, Esq.
Baudino Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street, N.E.
Atlanta, GA 30361

Edgar B. Wilkin, Jr., Esq.
Perry & Walters LLP
P. O. Box 71209
Albany, GA 31708-1209

This 30th day of January, 2009.

/s/ Mark H. Cohen
MARK H. COHEN